IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MEGAN COVINGTON

*Plaintiff,*

v.

COMPANIONS AND ANIMALS FOR REFORM AND EQUITY INC.

*Defendant.*

United States Courts
Southern District of Texas
FILED

DEC 11 2025

Nathan Ochsner, Clerk of Court

Civil Action No. _____

# COMPLAINT

Plaintiff, Megan Covington, files this Original Complaint against Defendant Companions and Animals for Reform and Equity, Inc. ("CARE"), and states as follows:

## INTRODUCTION

1. Plaintiff Megan Covington, a Black woman and former Senior Director of Research & Development at CARE, brings this action for race discrimination, sex discrimination, and retaliation under Title VII.

2. Plaintiff was subjected to unequal treatment, racial and gender stereotypes, denial of benefits and opportunities available to male peers, and adverse employment actions, including termination, after engaging in protected activity under Title VII.

3. After engaging in protected activity, CARE pre-decided her termination implemented a "performative" coaching plan, and ultimately terminated her without progressive discipline, while replacing her with a less-experienced, lower-paid employee and retaining the male employee who was the subject of her complaint despite documented misconduct.

1

4. CARE further retaliated post-termination by attempting to silence Plaintiff's lawful advocacy, misrepresenting her contributions to third parties, and refusing EEOC settlement negotiations. Plaintiff suffered economic, reputational, and emotional harm as a result of CARE's actions.

## I. JURISDICTION AND VENUE

5. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., prohibiting employment discrimination based on race, sex, and retaliation.

6. This Court has federal question jurisdiction under 28 U.S.C. §1331 and §1343.

7. Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. §1391(b) because plaintiff lives in this District, worked remotely from Houston for CARE, and a substantial part of the events giving rise to these claims occurred here.

## II. PARTIES

8. Plaintiff Megan Covington, is a Black woman and former employee of CARE. She resides in Houston, Texas.

9. Defendant CARE is a nonprofit corporation headquartered in Baltimore, Maryland. It may be served through its registered agent Jennifer Evans, 420 Dunkirk Rd. Baltimore, MD 21212.

## III. PROCEDURAL BACKGROUND

6. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission and Maryland Commission on Civil Rights alleging race discrimination, sex discrimination, and retaliation.

7. The EEOC issued a Notice of Right to Sue on December 3, 2025. Plaintiff files this lawsuit within 90 days as required by law. A true and correct copy of that notification is attached as **Exhibit A.**

## IV. ALLEGATIONS OF FACT

### Employment and Achievements

8. Plaintiff was hired by CARE in April 2024 as Senior Director of Research & Development, a position funded by PetSmart Charities for a three-year term. Plaintiff performed with excellence and produced measurable outcomes, including leading a PetSmart-funded racial equity study.

### Protected Activity and Discrimination

9. Beginning in September 2024, Plaintiff observed and experienced a pattern of race- and sex-based discrimination, including multiple instances where Black women were removed from the organization under pretextual circumstances.

10. On September 5, 2024, Plaintiff verbally reported discriminatory conduct toward Black women.

11. On September 13, 2024, Plaintiff reported ethical and grant-compliance concerns related to a PetSmart Charities-funded research study, including improper participant enrollment and other procedural violations.

12. On September 14, 2024, Plaintiff delayed an improper payment to a romantic partner of Chief of CARE Centers Tre Law based on conflict-of-interest concerns. Mr. Law immediately escalated an unfounded complaint against Plaintiff to CEO James Evans, contrary to established policies. Leadership immediately sided with Mr. Law without investigating Plaintiff's ethical concerns.

13. Rather than investigate the ethical and grant-related issues Plaintiff reported, CEO James Evans admitted he "didn't have time to read" my report, delaying all follow-up for over a month.

14. On September 17, 2024, Plaintiff reported ethical concerns and hostile work environment to Supervisor and Chief of Research Sloane Hawes. Leadership conducted no investigation.

### Formal HR Complaint and Escalating Retaliation

15. On October 15, 2024, Evans dismissed Plaintiff's reported concerns.

16. On October 17, 2024, Plaintiff filed a formal HR complaint.

17. Between September and November 2024, Plaintiff suffered increased scrutiny and adverse actions, including racial and gender stereotypes (e.g., "Angry Black Woman"), fabricated performance concerns, denial of reimbursements granted to male peers, exclusion from professional recognition and corrective processes, and increased scrutiny immediately following protected activity. CARE treated Plaintiff differently from similarly situated employees, disregarding its own policies.

18. On November 4, 2024, Supervisor Sloane Hawes cited "not resolving conflict" in Plaintiff's six-month performance review meeting despite CARE's own delays.

19. On November 18, 2024, HR issued a "resolution report" recommending coaching for Plaintiff despite no findings of misconduct. Mr. Law, the subject of her reports, received no discipline for documented policy violations.

### Internal Records Establish Pretext

20. CARE's own internal records, produced during the EEOC investigation, contained two conflicting accounts of the same events:

4

(a) a November 8, 2024 incident report corroborating Plaintiffs concerns and documenting Mr. Law's violations, and

(b) a November 18, 2024 "resolution report" reframing events to justify corrective action against Plaintiff.

21. Two days after the resolution report, internal emails produced to the EEOC reveal that the decision to terminate Plaintiff had already been made.

22. On November 20, 2024, Supervisor Sloane Hawes wrote in an email produced to the EEOC that she wanted to focus on "replacement and/or pivoting the plans for Dr. Megan's projects" after the holidays, indicating the termination decision had already been made.

23. Hawes further recommended restructuring Plaintiff's role to a lower-paid position intended for a less-experienced employee.

24. In the same EEOC-produced internal email, HR Director Steve Petersheim wrote:

"Starting coaching seems performative and a poor use of time."

25. CEO James Evans wrote:

"I don't think it makes sense for [Chief of Programs] to implement coaching activities for someone we've decided is not a good fit..."

"My other concern is PetSmart Charities (PSC). We have not received our grant letter or payment. I wonder if it might be wiser to receive either ahead of a restructure."

26. COO Jen Evans wrote:

"The PSC grant takes precedence here ... but we need reasons for termination. ... I also don't support bringing [Chief of Programs] on to 'train' her as she will be working to manipulate the truth to another person ..."

27. These EEOC-produced emails confirm that (i) Plaintiff's termination had been pre-decided (ii) proposed "coaching" was not intended to remediate performance, (iii) timing

5

was coordinated around grant funding rather than documented performance issues, and (iv) CARE needed to create reasons to justify termination.

## Termination and Aftermath

28. CARE terminated Plaintiff on November 22, 2024, without progressive discipline.

29. Plaintiff's unemployment benefits were denied despite CARE's written policy stating national coverage.

30. Mr. Law, the subject of Plaintiff's reports, remained employed at CARE despite documented misconduct.

31. Plaintiff was replaced by a less experienced, lower-paid early career researcher while a similarly situated white peer remained employed.

32. In February 2025, Supervisor Sloane Hawes misrepresented confidential details of her termination to a third party and affirmed that "CARE is not a place for Black women."

33. On June 27, 2025, CARE submitted a misleading EEOC Position Statement. CARE also misrepresented confidential internal communications, marking them as "confidential," delaying response to EEOC inquiries for two months, and selectively using them in its Position Statement.

34. In July 2025, CARE publicly minimized Plaintiff's contributions to the PetSmart Charities Racial Equity study she led. Plaintiff was excluded as an author on the report while her white peer received credit.

35. In October 2025, CARE issued multiple cease-and-desist letters attempting to silence Plaintiff's lawful advocacy.

36. In November 2025, CARE refused EEOC settlement due to Plaintiff's protected activity.

6

37. Plaintiff suffered economic losses, reputational harm, emotional distress, and other damages.

## V. CAUSES OF ACTION

**COUNT 1 — Race Discrimination (Title VII)**

38. Plaintiff incorporates all preceding paragraphs.

39. Plaintiff is a member of a protected class on the basis on race. She is a Black woman.

40. CARE discriminated against Plaintiff based on race by applying unequal discipline, denying benefits, using racial stereotypes, fabricating performance concerns, and replacing Plaintiff with a less-qualified employee outside her protected class.

41. CARE's internal records reflect a broader pattern of discriminatory treatment towards Black women.

42. As a result, Plaintiff suffered termination, lost wages, reputational harm, and emotional harm.

**COUNT 2- Sex Discrimination (Title VII)**

43. Plaintiff incorporates all preceding paragraphs.

44. Plaintiff is a member of a protected class on the basis on sex. She is a Black woman.

45. CARE treated Plaintiff less favorably than male employees by denying reimbursements, ignoring complaints against men who committed policy violations, excluding Plaintiff from corrective pathways available to male peers, and terminating Plaintiff while retaining male employees with similar or greater issues.

46. CARE's actions caused financial, professional, and emotional harm.

**COUNT 3 — Retaliation (Title VII)**

47. Plaintiff incorporates all preceding paragraphs.

48. Plaintiff engaged in multiple forms of protected activity, including:

    (a) reporting discrimination against Black women;

    (b) reporting sex-based disparities;

    (c) opposing race- and sex-based discrimination directed at her;

    (d) filing a formal HR complaint;

    (e) reporting ethical and grant-compliance concerns related to a PetSmart Charities-funded research study; and

    (f) participating in the EEOC process.

49. Plaintiff's reports of grant-compliance concerns and conflicts of interest were made in good faith, consistent with her job responsibilities, and were directly connected to her professional obligations within CARE's research program.

50. CARE retaliated against Plaintiff for these protected activities by increasing scrutiny, fabricating performance issues, denying corrective pathways made available to others, excluding Plaintiff from benefits and opportunities, and pre-deciding her termination.

51. CARE's internal emails confirm that leadership discussed and planned Plaintiff's termination after her protected activity, that proposed "coaching" was considered merely "performative," and that the timing was linked to grant receipt rather than documented performance-based rationale.

52. After Plaintiff's termination, CARE continued to retaliate by issuing multiple cease-and-desist letters attempting to silence Plaintiff's public advocacy, misrepresenting the circumstances of her employment to third parties, downplaying Plaintiff's contributions to PetSmart-funded research, and refusing EEOC settlement because of Plaintiff's ongoing reporting activity.

53. CARE acted knowingly and in reckless disregard for Plaintiff's rights, causing reputational and emotional harm.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Enter judgment in favor of Plaintiff and against Defendant for violation of Plaintiff's Rights under Title VII and Section 1981;

B. Declare that the actions of the Defendant constituted unlawful discrimination and retaliation;

C. Award damages to compensate for lost wages, benefits, reputational harm, emotional distress, and other economic losses;

D. Award compensatory and punitive damages sufficient to address the intentional discrimination and retaliation, and to deter future misconduct;

E. Award attorney's fees, interest, and costs of court;

F. Grant all other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

**Respectfully submitted,**

Megan Covington, Plaintiff, Pro Se
13280 Northwest Fwy Ste F-195
Houston, Texas 77040
Email: mncoving@gmail.com
Phone: (757) 633-2589
Date: December 10, 2025